IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**EILENE ROMERO,**

        **Plaintiff,**

v.                                                                                                No. CV 09–0817 LAM

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**
**Administration,**

        **Defendant.**

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 14*) and its accompanying *Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 15*) (hereinafter, collectively, "*Motion*"), filed in this case on January 25, 2010.  In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge conducting all proceedings and entering final judgment in this case. *See Documents 4, 9.*  The Court has reviewed Plaintiff's *Motion* (*Docs. 14, 15*), Defendant's *Response to Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 16*) (hereinafter, "*Response*"), Plaintiff's *Reply in Support of Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 19*) (hereinafter "*Reply*"), and the relevant law.  Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R.*").  Because (A) the Administrative Law Judge's (hereinafter, "ALJ") reason for rejecting the treating physician's opinion was not supported by substantial evidence and the opinion was not evaluated under the proper legal standards, (B) the ALJ's credibility findings are not supported by substantial evidence,

and (C) the restrictions in the hypothetical are not borne out by the record, the Court **FINDS** that Plaintiff's *Motion* should be **GRANTED** and that the Commissioner's decision should be **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order. *See* 42 U.S.C. § 405(g) (sentence four) ("The [district] court shall have power to enter . . . a judgment . . . remanding the cause for a rehearing.").

## I.  Procedural History

On March 28, 2006, Plaintiff Eilene Romero filed an application for supplemental security income (hereinafter, "SSI").  (*R. at 53–56.*)  She alleged disability since November 1, 2005 (*R. at 53*) due to morbid obesity and arthritis in her back and hips (*see R. at 26, 13*).  Her application was denied initially on June 22, 2006 and upon reconsideration on September 29, 2006. (*R. at 39–42, 35–37.*)

Plaintiff requested a hearing (*R. at 33–34*), and ALJ Barbara Perkins conducted a hearing on March 4, 2008 (*R. at 207, 209*).  Plaintiff was present and testified at the hearing (*R. at 210–37*), and she was represented by counsel (*R. at 207–41*).  Vocational expert (hereinafter, "VE"), Daniel Moriarty, was also present and testified at the hearing.  (*R. at 207, 235–36, 238–40.*)

On November 5, 2008, the ALJ issued her decision, finding that under the relevant sections of the Social Security Act, Ms. Romero was not disabled.  (*R. at 11–18.*)  Ms. Romero requested that the Appeals Council review the ALJ's decision.  (*R. at 7.*)  On June 25, 2009, the Appeals Council denied Ms. Romero's request for review, which made the ALJ's decision the final decision of the Commissioner.  (*R. at 3–5.*)  On August 21, 2009, Ms. Romero filed her complaint in this case, which is ripe before this Court.  ***Complaint*** (*Doc. 1*).

## **II.  Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s

findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

For purposes of supplemental security income, a person is considered to be disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential evaluation process has been established for evaluating a disability claim. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.920. At the first four steps of the sequential evaluation process, the claimant must show (1) that she is not engaged in substantial gainful activity; (2) that she has a medically severe impairment or combination of impairments; and that either (3) her impairment(s) meet or equal one of the presumptively disabling impairments listed in the regulations under 20 C.F.R., Part 404, Subpart P, Appendix 1,[1] or that (4) she is unable to perform her past relevant work. *See Grogan v. Barnhart*, 399 F.3d at 1261 (10th Cir. 2005); 20 C.F.R. § 416.920(a)(4). At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity (hereinafter, "RFC"), age, education, and work experience. *Id.*

### III.  Plaintiff's Age, Education, Work Experience, and Medical History; ALJ's Decision

Ms. Romero was born on May 2, 1967. (*R. at 53, 211.*) She graduated from high school after attending special education classes in seventh through twelfth grades. (*R. at 211, 62–77.*) She

---

[1] If a claimant can show that her impairment meets or equals a listed impairment, and also meets the duration requirement in 20 C.F.R. § 404.1509 (requiring that an impairment have lasted or be expected to last for a continuous period of at least twelve months), she will be found disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) and 404.1520(d).

has worked as a security guard and hotel housekeeper, and in the late 1990's, she baked goods at home and sold them on her reservation.  (*R. at 15, 60, 218, 221.*)  She alleged that she became disabled on November 1, 2005.  (*R. at 53.*)

On November 5, 2008, the ALJ issued her decision, finding that Plaintiff was not disabled at step five of the five-step sequential evaluation process because, considering Ms. Romero's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.  (*R. at 17.*)  At step one, the ALJ found that Ms. Romero had not been engaged in substantial gainful activity since March 28, 2006, the onset date of her alleged disability.  (*R. at 13.*)  The ALJ, therefore, proceeded to the next step.

At step two, the ALJ found that Ms. Romero had several severe, medically determinable impairments: (1) morbid obesity; (2) likely spinal canal stenosis of the lumbar spine; (3) degenerative joint disease and avascular necrosis of the right hip; (4) degenerative joint disease of the left hip; (5) history of fracture to the right tibia.  *Id.*  Because the ALJ found that Ms. Romero had at least one severe, medically determinable impairment, she proceeded to the next step.

At the third step, the ALJ found that none of the step-two impairments, alone or in combination, met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, App. 1.  (*R. at 14.*)  If any Listing had been met, the ALJ would have found Ms. Romero disabled at this step.  (*R. at 12.*)  Since the ALJ did not find that any Listing was met or that Ms. Romero was disabled at this step, she proceeded to the next step.

Before step four, the ALJ determined Ms. Romero's RFC as follows:

> [Ms. Romero can] perform sedentary work . . . except that she can sit for 30 minutes at a time for a total of six hours in an eight-hour workday, can stand or walk for 30 minutes at a time for a total of two hours in an eight-hour workday using an assistive device on one side, can push/pull with the upper extremities in a manner consistent with

> sedentary strength limitations, can only push/pull with her lower left extremity, can never climb ladders, ropes or scaffolds and can never crouch but can occasionally climb ramps or stairs, occasionally balance on the left side, can occasionally kneel, crawl or stoop and must avoid concentrated exposure to unprotected heights.

(*R. at 15.*) In support of her RFC, the ALJ explained why she did not find Ms. Romero's subjective complaints of pain to be entirely credible. (*R. at 15–16.*) Although the ALJ found that Ms. Romero's "medically determinable impairments could reasonably be expect to produce the alleged symptoms," she also found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the [RFC.]" (*R. at 16.*)

> The claimant has degenerative hip disease, exacerbated by morbid obesity and consequently has some mobility problems. The claimant's reported limitations are contradicted by her statements regarding her activities, however. Ms. Romero reported in her paperwork, dated April 2006, that she got up, cleaned house, prepared dinner and made baked goods that she intended to sell on the reservation. The claimant said that she helped her son with homework, fed her pet dog and noted that she didn't drive as she didn't have a valid driver's license. The claimant stated that she could shop and that she visited friends and relatives occasionally. The claimant has reported that she has very sharp pain but only takes Tylenol or Advil for hip pain.

*Id.* At step four, the ALJ found that Ms. Romero was unable to perform any of her past relevant work because that work required her to stand or walk for at least six hours of an eight-hour workday, and Ms. Romero can only stand or walk for 30 minutes at a time, with an assistive device, for a total of two hours in an eight-hour workday. (*R. at 16.*) Because the ALJ found that Ms. Romero could not return to her past work, she proceeded to the fifth step. At the fifth and final step, the ALJ found that, considering Ms. Romero's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, such as a surveillance system

monitor, a bench hand, or a polisher, all of which are considered sedentary, unskilled work.[2]  (*R. at 17.*)  The ALJ, therefore, determined that Ms. Romero was not disabled within the meaning of the Social Security Act.  (*R. at 17–18.*)

## IV.  Analysis

Ms. Romero contends that the ALJ erred by (A) improperly rejecting the opinion of her treating physician, Dr. Gehlert (***Motion*** (*Doc. 15*) at 6–8), (B) improperly evaluating her credibility (*id.* at 8–13), and (C) failing to include all of her restrictions in the hypothetical question posed to the VE (*id.* at 13–14).  The Court will remand the case to the Commissioner because the ALJ failed to apply the correct legal standard in evaluating Dr. Gehlert's opinion, because the stated reason for rejecting a portion of Dr. Gehlert's opinion was not supported by substantial evidence, and because the ALJ's credibility finding is not supported by substantial evidence.

### *A.  The ALJ's Reason for Rejecting the Treating Physician's Opinion is Not Supported by Substantial Evidence and the Opinion was Not Evaluated Under the Proper Legal Standard*

Ms. Romero asserts that the ALJ erred in rejecting her treating physician's restriction to lift no more than five pounds.  ***Motion*** (*Doc. 15*) at 6–8.  The Commissioner responds that the five-pound restriction was properly rejected because the record contains no evidence of any hand

---

[2] Social Security defines "sedentary work" and "unskilled, sedentary work" as follows.

> The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

Social Security Ruling (SSR) 96-9p, 1996 WL 374185 at *3 (1996).

impairment.  *Response* (*Doc. 16*) at 3–6.  Ms. Romero replies that the absence of a hand impairment is irrelevant.  *Reply* (*Doc. 15*) at 1–3.  Ms. Romero further replies that the ALJ failed to adequately explain her reasons for rejecting the opinion because the reason she gave, that the restriction was unsupported by the evidence, is factually inaccurate.  *Id.*  Lastly, she points out that any other reasons cited in the Commissioner's *Response* are impermissible *post hoc* rationalizations, *Reply* (*Doc. 15*) at 1–3, and the ALJ did not cite to any evidence in the record that contradicted Dr. Gehlert's opinion, *id.* at 2–3.

Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are supported by the medical evidence and are consistent with the record; this is known as the "treating physician rule."  *See* 20 C.F.R. § 416.927(d)(2); *Langley v. Barnhart*, 373 F.3d at 1119.  The idea is that a treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations" and, therefore, a treating physician's opinion merits controlling weight.  *Doyal*, 331 F.3d at 762.

In order to receive controlling weight, treating physician opinions must be both supported by "medically acceptable clinical and laboratory diagnostic techniques" and consistent with the other substantial evidence in the record.  *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (citations omitted).  If not, the opinions may not merit *controlling weight* but should still receive *deference* and must be weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion

> and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.*; *see* 20 C.F.R. § 416.927(d); SSR 06-03p, 2006 WL 2329939 at **4–5 (*citing* 20 C.F.R. § 416.927(d)). "Not every factor . . . will apply in every case," SSR 06-03p at *5, however, and all six factors should not be seen as absolutely necessary. What is absolutely necessary, though, is that the ALJ give good reasons for the weight that she ultimately assigns to the opinions, and such reasons must be "sufficiently specific to [be] clear to any subsequent reviewers." *Langley*, 373 F.3d at 1119; *see* 20 C.F.R. § 416.927(d)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004). Moreover, the ALJ's reasons must be supported by substantial evidence. *Langley*, 373 F.3d at 1120–21 (holding that ALJ erred when, *inter alia*, his reasons for rejecting the treating physician's opinion were not supported by substantial evidence). Lastly, "[t]he ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (citation omitted).

In sum, when properly rejecting a treating physician's opinion, or some portion of it, an ALJ must follow two steps. First, the ALJ must find that the opinion is not entitled to controlling weight by finding that it (A) is not well-supported by medically acceptable clinical and laboratory techniques or (B) is not consistent with the record. Second, the ALJ must still give deference to the opinion and weigh it according to the six factors listed above. At both steps, the ALJ's findings, like all findings, must be supported by substantial evidence.

Here, the ALJ's lone reason for rejecting Dr. Gehlert's lift/carry restriction is not supported by substantial evidence, and Dr. Gehlert's opinion was not evaluated by the proper legal standard. The ALJ rejected the five-pound restriction because it was "wholly unsupported by the record as a

9

whole." (*R. at 16.*) Dr. Gehlert, however, provided support for his restriction when he attributed it to degenerative joint disease in Ms. Romero's hip, a condition well-documented in the medical records. (*R. at 109, 112, 114, 118, 120, 122, 124, 127, 128, 131, 157, 161.*) The ALJ did not take issue with the support provided by the doctor; rather, she denied that there was any support. Because Dr. Gehlert did, in fact, support the restriction and because the ALJ based her rejection on the absence of any support, the ALJ's stated reason is not supported by substantial evidence.

Furthermore, it is not evident that the ALJ considered the six factors, much less used them to weigh Dr. Gehlert's opinion. Liberally reading the decision, it appears that the ALJ was aware of the treatment that Dr. Gehlert provided as well as the kind of testing and exams he performed, which corresponds to the second half of factor 2. (*See R. at 13.*) There is no indication, however, that the ALJ rejected Dr. Gehlert's lift restriction because of the type of treatment and testing he performed on Ms. Romero. Additionally, the ALJ, as described above, stated that the restriction at issue was not supported by any evidence (*see R. at 16*), which would correspond to factor 3, but is factually inaccurate. Beyond these two instances, there is nothing in the decision that indicates that the ALJ considered the other factors. The ALJ, therefore, failed to apply the proper legal standard to her evaluation of Dr. Gehlert's opinion.

### *B. The ALJ's Credibility Determination is Not Supported by Substantial Evidence*

Ms. Romero asserts that the ALJ erred in evaluating her claims of disabling pain. Specifically, she argues that the ALJ's reasons for finding her incredible are not supported by substantial evidence and did not conform to the proper legal standards because: (i) the ALJ's reasons are undercut by other evidence in the record, which was ignored, including statements and observations made by her friend, Lynn Stevens, and the Social Security Administration (hereinafter, "SSA") representative; (ii) it is not accurate that Ms. Romero only takes over-the-counter pain

medication; and (iii) the performance of activities of daily living (hereinafter, "ADLs") is not substantial evidence that she does not have disabling pain. *Motion* (*Doc. 15*) at 8–13. The Commissioner responds that the ALJ's determination and reasons were supported by substantial evidence. *Response* (*Doc. 16*) at 6–10. Ms. Romero replies that the Commissioner has only supplied an impermissible *post hoc* rationalization for the ALJ's determination. *Reply* (*Doc. 19*) at 4–5.

In evaluating the credibility of a claimant's subjective complaints of pain, the ALJ follows the steps outlined in *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). "If a pain-producing impairment is demonstrated by objective medical evidence, the [ALJ] must consider the relationship between the impairment and the pain alleged" without regard to the claimant's credibility. *Luna*, 834 F.2d at 163; *see White v. Barnhart*, 287 F.3d 903, 909 n.3 (10th cir. 2001). First, accepting as true the subjective allegations of pain, the ALJ must determine whether the claimant has a medically determinable impairment that "could reasonably be expected to produce the *alleged* pain." *Luna*, 834 F.2d at 163 (internal quotation marks omitted; emphasis in original). "If an appropriate nexus does exist," the ALJ must next consider all of the relevant evidence "to determine whether the claimant's pain is in fact disabling." *Id.* The ALJ must consider "the medical data previously presented, any other objective indications of the degree of pain, and subjective accounts of the severity" of pain in determining whether the ALJ believes the claimant. *Id.* That is, the ALJ must assess the credibility of the claimant's assertions of pain. *Id.* ALJs, however do not have to discuss every piece of evidence. *See Thacker v. Comm'r of Soc. Sec.*, No. 02-6138, 99 Fed. Appx. 661, 664–665, 2004 WL 1153680 (6th Cir. May 21, 2004) (unpublished) (declining to remand for ALJ's failure to discuss SSA employee's observations of claimant); *Stargel v. Astrue*, No. 1:07-CV-277, 2008 WL 4809735 at *10 (N.D. Ind. Oct. 31, 2008) (unpublished) (declining to remand for ALJ's

failure to discuss SSA employee's observations of claimant where such observations did not contradict the ALJ's findings).

"Credibility determinations are peculiarly the province of the [ALJ, and courts] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990). "[I]t is well settled that [ALJs] must give reasons for their decisions." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988). Credibility findings, therefore, "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).

Here, although the ALJ found that Ms. Romero's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," the ALJ also found that Ms. Romero's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the [RFC]. (*R. at 16.*) The ALJ then gives two reasons for finding Ms. Romero's allegations of pain to be incredible. First, the ALJ found that Ms. Romero's daily activities, including helping her son with his homework and feeding her pet dog, contradict her reported limitations. (*R. at 16.*) Second, the ALJ found that Ms. Romero takes only Tylenol or Advil for hip pain, which is inconsistent with her reports of pain. *Id.* Regardless of the evidence that Ms. Romero insists was ignored by the ALJ, which the Court may not re-weigh, the ALJ's credibility findings are not supported by substantial evidence. The record establishes that Ms. Romero's treatment for hip pain went beyond Tylenol and Advil. For example, on April 23, 2007, Ms. Romero was prescribed prescription-strength Tylenol-3, which

includes codeine,[3] for hip pain. (*R. at 157, 158.*) On April 24, 2007, Ms. Romero was advised to take non-steroidal anti-inflammatory drugs (hereinafter, "NSAIDs") for pain, and she was prescribed "a one-time dose of Toradol[4] for pain control." (*R. at 131.*) On October 30, 2007, Ms. Romero was prescribed 375 mg of Naproxen twice per day and as needed for arthritis, and injections of corticosteroids were discussed. (*R. at 143, 118.*) On May 27, 2008, Ms. Romero was given an injection of Kenalog[5] and lidocaine[6] for hip pain. (*R. at 112.*) On November 25, 2008, Ms. Romero was referred for a corticosteroid injection and a trial of anti-inflammatory medication.[7] (*R. at 199.*)

---

[3] *Physicians' Desk Reference* 2507 (57th ed. 2003).

[4] Toradol is an NSAID used for "moderately severe acute pain that requires analgesia at the opioid level, [and] is not indicated for minor or chronic painful conditions." *Physicians' Desk Reference* 2942 (57th ed. 2003).

[5] Kenalog is a name-brand corticosteroid hormone. Webmd.com, Drugs & Medications - Kenalog Inj, http://www.webmd.com/ (Search "Kenalog Inj;" then follow "Search Results for Kenalog Inj" hyperlink) (last visited June 17, 2010).

[6] Lidocaine is an anesthetic. *Physicians' Desk Reference* 648 (57th ed. 2003).

[7] Although the issue has not been raised, the Court notes that some of the evidence in the record was submitted after the ALJ issued her decision. (*See R. at 193–206*, medical records submitted to the Appeals Council on June 8, 2009.) The ALJ's decision is dated November 5, 2008 (*R. at 18*), and the Appeals Council denial of review is dated June 25, 2009 (*R at 3*). A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision when the Appeals Council denies review, 20 C.F.R. § 416.1481. The Tenth Circuit, however, has held that, in some situations, a court must consider evidence beyond that which was considered by the ALJ. *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994); *see Martinez v. Barnhart*, 444 F.3d 1201, 1207–08 (10th Cir. 2006). Pursuant to 20 C.F.R. § 416.1470(b), any new and material evidence that relates to the period on or before the date of the ALJ's decision shall be considered by the Appeals Council in determining whether to review the ALJ's decision. If the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision. *O'Dell*, 44 F.3d at 858 (citing 20 C.F.R. § 404.981). Because a court reviews the final decision based on "the record viewed as a whole," it considers the evidence that was before the ALJ as well as the new and material evidence that was before the Appeals Council. *Id.* (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). A court reviews the Commissioner's decision, which is the ALJ's decision and not the Appeals Council's denial of review. *See id.* at 858–59. Considering all of the evidence in the administrative record, a court decides whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Maes*, 522 F.3d at 1096. The Court, therefore, considers both the evidence that was before the ALJ and the evidence that was submitted after her decision.

On May 21, 2009, Ms. Romero was prescribed Vicodin[8] as well as NSAIDs for her hip pain. (*R. at 195.*) The ALJ's finding that Ms. Romero "only takes Tylenol or Advil for hip pain," is, therefore, not supported by substantial evidence.

The only other reason given by the ALJ to support her finding that Ms. Romero's complaints were not credible was that her reported activities contradict her reported limitations. The ALJ cited the April 2006 "Function Report—Adult" (*R. at 96–103*) and found that Ms. Romero "got up, cleaned house, prepared dinner and made baked goods that she intended to sell on the reservation[,] . . . helped her son with homework, fed her pet dog and noted that she didn't drive as she didn't have a valid driver's license." (*R. at 16.*)

"[T]he ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson*, 987 F.2d at 1489 (citation omitted). For example, in *Thompson*, the Tenth Circuit Court of Appeals found that "minimal daily activities such as visiting neighbors and doing light housework" was not substantial evidence that the claimant did not have disabling pain. *Id.* Similarly, in *Harrison v. Shalala*, the court found that "plaintiff's ability to do vacuuming, light housework, exercise, and walking [coupled with] the opinion of plaintiff's treating physician that plaintiff was comfortable at rest and in the performance of ordinary light daily activities" was not substantial evidence that the claimant's allegations of pain were incredible. No. 93-5238, 28 F.3d 112, 1994 WL 266742 at *3 (10th Cir. June 17, 1994) (unpublished) (internal quotation marks omitted). The ADLs cited by the ALJ in the case at bar are similar to those in the precedent cases. Ms. Romero's reported ADLs are limited and, therefore, cannot constitute substantial evidence for finding that she does not suffer from disabling pain. Because the ALJ's first

---

[8] Vicodin is the name-brand combination of hydrocodone bitartrate, which is an opioid analgesic, and acetaminophen. *Physicians' Desk Reference* 509 (57th ed. 2003).

reason for rejecting Ms. Romero's complaints of pain is not supported by substantial evidence and because the ALJ's second reason is inadequate to support the finding, remand on the issue is warranted.

### *C. Hypothetical to VE*

Ms. Romero argues that the ALJ erred in failing to include all of the restrictions assessed by her treating physician in the hypothetical to the VE. *Motion* (*Doc. 15*) at 13–14. Hypotheticals "must include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (citations omitted). Furthermore, an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citation and quotation marks omitted). Here, the hypothetical given to the VE mirrored the RFC found by the ALJ. (*Compare R. at 15 with R. at 238–40.*) The ALJ, however, failed to cite to any support in the record for the specific restrictions she found in the RFC. Moreover, the Court has meticulously reviewed the record and can find no medical evidence to support the findings. As one example, the ALJ found that Ms. Romero was limited to sedentary work (*R. at 15*), which requires lifting ten pounds (*See* SSR 96-9p, 1996 WL 374185 at *3). Of the medical reports that addressed a lift and/or carry restriction, which were completed by Drs. Werner, Kando, and Gehlert, none determined that Ms. Romero was restricted to lifting and/or carrying ten pounds. Drs. Werner and Kando assessed that she could frequently lift and/or carry twenty-five pounds and occasionally lift and/or carry twenty-five pounds. (*R. at 171* (Dr. Werner)*, 166* (Dr. Kando assessing medium work[9]).) Dr. Gehlert assessed that she could frequently and occasionally lift and/or carry less than five

---

[9] "The regulations define medium work [*inter alia*] as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." SSR 83-10, 1983 WL 31251 at *6 (1983) (citing 20 C.F.R. 416.967(c)).

pounds.  (*R. at 109.*)  Like the other findings in the RFC, the Court cannot determine on what evidence the ALJ relied in finding that Ms. Romero was limited to lifting and/or carrying ten pounds.  The Court, therefore, finds that the RFC restrictions found by the ALJ and included in the hypothetical are not borne out by the record, and the hypothetical is, therefore, in error.

The Court has found that the restrictions in the hypothetical are not borne out by the record, but this is distinct from Ms. Romero's claim.  She, in contrast, argues that certain restrictions *are* borne out by the record and, therefore, the ALJ erred in omitting them in the hypothetical to the VE.  Although the Court has found that some of the restrictions included in the hypothetical were not borne out by the record, it need not determine which restrictions *were*.  Such a determination may be affected by the proper evaluation of the medical source opinions on remand, as directed in Section B and, therefore, is properly left to the Commissioner.

## V.  Conclusion

For the reasons stated above, the Court **FINDS** that (A) the ALJ's reason for rejecting the treating physician's opinion was not supported by substantial evidence and the opinion was not evaluated under the proper legal standards, (B) the ALJ's credibility findings are not supported by substantial evidence, and (C) some of the restrictions in the hypothetical are not borne out by the record, Accordingly, the Court will grant in part Ms. Romero's *Motion to Remand or Reverse* (*Doc. 11*) and remand this case to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

**IT IS THEREFORE ORDERED** that Ms. Romero's *Motion to Reverse or Remand Administrative Agency Decision* (*Docs. 14, 15*) is **GRANTED**, and the Commissioner's decision

is **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order.  A final order will be entered concurrently with this Memorandum Opinion and Order.

    **IT IS SO ORDERED.**

*Lourdes A. Martínez*
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**